IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

RONALD C. WILLIAMS,            )
                               )
            Plaintiff,          )
                               )
      v.                        )        1:20cv904
                               )
RONALD CALVIN WILLIAMS, II,     )
                               )
            Defendant.          )

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This lawsuit is an intrafamilial dispute over ownership of a warehouse and the rights to a related lease. Before the court are cross-motions for summary judgment filed by *pro se* Plaintiff Ronald C. Williams ("Williams")[1] (Doc. 57) and his son, Defendant Ronald Calvin Williams, II ("Calvin") (Doc. 37). Also before the court are two notices by Williams to voluntarily dismiss his claims for fraudulent misrepresentation (Doc. 40) and unjust enrichment (Doc. 41). Calvin agrees to such dismissals but urges they should be with prejudice. (Doc. 44 at 2 n.2.) For the reasons set forth below, Williams's motion for summary judgment will be denied, Calvin's motion for summary judgment will be granted in part and denied in part, and the court will grant Williams's motions to

_____

[1] Although Williams proceeds *pro se*, he was previously licensed to practice law in North Carolina but has been on inactive status since 2005. (Doc. 55.)

dismiss his fraudulent misrepresentation and unjust enrichment claims, which will be dismissed with prejudice.

## I.   BACKGROUND

The facts, either not in dispute or viewed in the light most favorable to the non-moving party in the cross-motions for summary judgment, establish the following:

Williams is an 83-year-old resident of North Carolina and the father of Calvin, a resident of Colorado. (Doc. 19 ¶¶ 1-2; Doc. 38 at 2.)  Twenty years ago, Williams purchased a warehouse located in Union County, North Carolina. (Doc. 19 ¶ 3.)  Since 2018, the warehouse has been occupied by a tenant under a five-year lease who pays approximately $75,000 per year in rent with annual 3 percent increases. (Doc. 37-1 at 5-6.)  According to Williams, the warehouse is now valued between $1,000,000 and $2,000,000. (Doc. 19 ¶ 3.)  Between May 2012 and October 2016, Williams transferred or directed the transfer of the deed for the warehouse to multiple people, including his brother and his daughter. (Id. ¶ 4; pp. 6-9.)

On April 16, 2020, Williams drafted a quitclaim deed transferring the warehouse to Calvin ("the transfer"). (Id. at 10.)  The deed states that the transfer was made in exchange "[f]or valuable consideration," (id.), and affidavits submitted by Calvin and Audra Dougherty, Williams's daughter and Calvin's sister, claim that the transfer was made in exchange for Calvin's agreement

2

to care for Williams for the rest of his life. (See Doc. 37-2 ¶ 3; Doc. 37-1 ¶ 4; see also Doc. 52 at 4 (excerpt from Calvin's interrogatory answers) ("Plaintiff conveyed the real property at issue in this action to Defendant in exchange for Defendant's promise to provide for Plaintiff's room, board, medical care, and related needs for the rest of his life.").) Dougherty submitted an email sent to her by Williams shortly after the transfer of the warehouse in which Williams stated, "I deeded the warehouse to Calvin in exchange for his taking care of me until my death." (Doc. 37-2 at 2; see also Doc. 37-3 at 37-38.) Williams, however, has indicated that the transfer was made in exchange for Calvin's promise to transfer the property back to Williams at some unspecified later time at his request.[2] (See Doc. 19 ¶¶ 4-6; Doc. 37-3 at 14-15, 113-14.)

Simultaneously with the transfer the warehouse, Williams executed an assignment to Calvin of the current tenant's lease agreement ("the assignment"). (See Doc. 37-1 at 17.) At the bottom of the lease agreement, Williams wrote by hand, "For valuable consideration, Ronald C. Williams hereby assigns this lease to Ronald Calvin Williams. For valuable consideration,

---

[2] It is unclear whether Williams maintains that this was the case, as his more recent filings suggest his position has changed. (See Doc. 36 (presenting arguments on summary judgment based upon Calvin's alleged promise to provide "room, board, medical care"); Doc. 52 at 1 ("The undisputed material facts are: . . . the alleged contract does not define with certainty the words 'room, board, medical care, and related needs' and 'support' or any other words . . . .").)

Ronald C. Williams II agrees to support in every way his father, Ronald C. Williams." (Id.; see also Doc. 37-3 at 12-14.)

During that same time period in April 2020, Williams made plans to enter an assisted living facility, Abbotswood, located in North Carolina. (See Doc. 19 at 11 (entrance check to Abbotswood dated April 2, 2020).) Prior to that time, from mid-2019 to early May 2020, Williams resided with Calvin in his home in Colorado. (Doc. 37-3 at 8.) Williams ultimately left Calvin's home on May 3, 2020, and briefly resided with Dougherty before entering Abbotswood on May 6. (Id.) Williams's monthly rent at Abbotswood was approximately $4,000, which covered meals and other services, and Calvin was expected to pay this from the warehouse rental proceeds.[3] (Id. at 17, 19.)

Around the time that Williams entered Abbotswood and shortly after the transfer and assignment, Williams expressed a desire to have Calvin transfer the warehouse back to him. (See, e.g., Doc. 37-2 ¶ 5.) On May 5, 2020, Williams contacted Calvin via email indicating, "I just cannot bear not having the warehouse in my name. I am emailing a deed to be signed by the two you [sic] before a notary." (Doc. 37-3 at 43-44, 85.) However, on May 9, 2020, Williams again emailed Calvin and stated, "I suggest as a solution to the warehouse management problem that you receive the

---

[3] In March 2021, Williams moved from Abbotswood to an apartment costing $1,540 per month in rent. (Doc. 36 at 3.)

4

rent and pay all the bills without my input and that I receive only my SS check." (Id. at 86.)

In an affidavit, Williams indicates that he suffers from epilepsy for which he is prescribed lamotrigine. (Doc. 47.) He further indicates that starting in early 2018, his prescription was inadvertently doubled and as a result of his double-dose of medication, he suffered several side effects including difficulty concentrating, drowsiness, paranoia, balance problems, vision problems, and difficulty speaking. (See id. at 1; Doc. 37-3 at 15-16.) He discovered and corrected his double-dosing in August 2020 (Doc. 47 at 2), after which time his medical condition improved (Doc. 37-3 at 15).

On August 26, 2020, Williams, proceeding *pro se*, filed the present suit in the General Court of Justice, Superior Court Division in Guilford County, North Carolina. (Doc. 1-1.) Calvin timely removed the action to this court. (Doc. 1.) In December 2020, Williams filed an amended complaint bringing three claims against Calvin: (1) fraudulent misrepresentation, (2) an action for "void contract," and (3) unjust enrichment. (Doc. 19.) In January 2021, Williams filed a motion that the court construed as a motion for a preliminary injunction, which was denied. (Docs. 23, 33.) At the time, the court encouraged the parties to resolve their dispute through mediation (Doc. 33 at 12), but that was unsuccessful (Doc. 35). Both parties now move for summary

5

judgment.  (Docs. 37, 57.)  The motions are fully briefed and ready for resolution.  (See Docs. 36, 38, 44, 45, 46.)

Separately, Williams has filed two notices of voluntary dismissal, the first for his claim of fraudulent misrepresentation (claim one) (Doc. 40) and the second for his claim of unjust enrichment (claim three) (Doc. 41).  These requests are also ready for resolution.  (See Doc. 44 at 2 n.2.)

## II.  ANALYSIS

### A.  Voluntary Dismissal of Claims One and Three

Williams has filed notices of voluntary dismissal for his claims of fraudulent misrepresentation and unjust enrichment. (Docs. 40, 41.)  Calvin argues that these notices are procedurally improper and the claims should be dismissed with prejudice.  (Doc. 44 at 2 n.2.)  Williams has not responded to Calvin's request for dismissal with prejudice.

Federal Rule of Civil Procedure 41(a)(1) provides that a "plaintiff may dismiss an action without a court order by filing (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared."  Fed. R. Civ. P. 41(a)(1).  Here, Williams has filed two notices of dismissal.  (Docs. 40, 41.)  These notices are untimely as they were filed after Calvin filed both an answer and a motion for

6

summary judgment.[4] (See Docs. 20, 37.) As such, Williams requires a court order to dismiss these claims and Williams' notices of dismissal will therefore be treated as requests for dismissal pursuant to Rule 41(a)(2).

Rule 41(a)(2) provides that, except as provided in section (a)(1), "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). Although the decision is discretionary, the "purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th Cir. 1987). Thus, a district court should grant a Rule 41(a)(2) motion "absent plain legal prejudice to the defendant." Ellett Bros. v. U.S. Fid. & Guar. Co., 275 F.3d 384, 388 (4th Cir. 2001). A defendant cannot establish prejudice sufficient to defeat a Rule 41(a)(2) motion merely by showing that it has filed a summary judgment motion, Andes v. Versant Corp., 788 F.2d 1033, 1036 n.4 (4th Cir. 1986), or that it faces the prospect of a subsequent lawsuit, see Ellett Bros., 275 F.3d at 388-89. However, where dismissal is requested after proceedings are sufficiently advanced, dismissal without prejudice under Rule 41(a)(2) may be inappropriate. See Andes,

---

[4] The court has previously advised Williams as to the importance of adhering to all relevant rules, including the Local Rules and the Federal Rules of Civil Procedure, despite his *pro se* status. (See Doc. 33 at 4-5.)

7

788 F.2d at 1036.  A district court may instead dismiss an action with prejudice if the parties have prior notice that the court is considering such an action and the parties had an opportunity to respond.  See Hobbs v. Kroger Co., 175 F.3d 1014 (4th Cir. 1999) (table decision) (citing Choice Hotels Int'l Inc., 11 F.3d 469, 471 (4th Cir. 1993));[5] Andes, 788 F.2d at 1037.  "In deciding a Rule 41(a) motion, a district court should consider factors such as 'the opposing party's effort and expense in preparing for trial, excessive delay and lack of diligence on the part of the movant, and insufficient explanation of the need for a voluntary dismissal,' as well as 'the present stage of litigation.'" Miller v. Terramite Corp., 114 F. App'x 536, 539 (4th Cir. 2004) (quoting Phillips USA, Inc. v. Allflex USA, Inc., 77 F.3d 354, 358 (10th Cir. 1996)).

Here, Williams's notices of voluntary dismissal were filed weeks after Calvin filed his motion for summary judgment and almost six months after Calvin filed his answer.  (See Docs. 20, 37.) These notices were also filed weeks after the parties reached an impasse in mediation.  (See Doc. 35.)  Further, they were filed after Williams's complaint had been amended twice (see Docs. 1-1, 4, 19) and after the parties engaged in significant discovery,

---

[5] Unpublished opinions of the Fourth Circuit are not precedential but can be cited for their persuasive, but not controlling, authority. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006).

8

including producing documents, exchanging interrogatories, and taking depositions, (see, e.g., Doc. 37-3). At this point in the proceedings, a substantial amount of time has been spent by the parties, the court, and the mediator in addressing these claims. Moreover, Williams had the opportunity to respond to Calvin's request to treat the dismissal as one with prejudice as the request was made in response to Williams's brief in support of summary judgment. (See Doc. 44.) In fact, Williams filed two responses to Calvin's filing and neither addressed the request for dismissal with prejudice. (See Docs. 46, 52.) Lastly, Williams's notices of dismissal provide no explanation for the need for voluntary dismissal. (See Docs. 40, 41.) As the proceedings in this case are advanced, Williams had the opportunity and failed to oppose or even respond to Calvin's request that the dismissals be entered with prejudice, and Williams provides no explanation for the need for voluntary dismissal, the court finds that dismissal without prejudice pursuant to Rule 41(a)(2) is unwarranted and the claims will instead be dismissed with prejudice.

### B.  Summary Judgment

#### 1.  Untimeliness of Williams's Motion

Federal Rule of Civil Procedure 7(b) states that "[a] request for a court order must be made by motion" that must "be in writing unless made during a hearing or trial." Fed. R. Civ. P. 7(b). Similarly, Local Rule 7.3 states that "[a]ll motions, unless made

during a hearing or at trial, shall be in writing and shall be accompanied by a brief." See M.D.N.C. L.R. 7.3(a). Where a motion is untimely filed, Rule 6(b) provides that "the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b).

The deadline to file motions for summary judgment in this case was May 3, 2021. (Doc. 16.) On that date, Williams filed a "Brief in Support of his Motion for Partial Summary Judgment." (Doc. 36.) However, he failed to file an accompanying motion for summary judgment at that time. On August 4, 2021, the court directed Williams to file a motion for summary judgment along with a showing of excusable neglect for his untimely motion, in line with the requirements of Rule 6(b), should he wish to have a motion for summary judgment considered. (Doc. 56.) On August 9, 2021, Williams filed the motion. (Doc. 57.) In his motion, he indicates that he mistakenly believed that he filed a motion for summary judgment along with his brief and suggests that the mistake resulted either from non-typical COVID-19 symptoms, including confusion, that appear more commonly in older patients or from a side effect of his epilepsy medication. (See id. at 1.)

In determining whether a party has established excusable neglect for a late filing, courts consider: "'[1] the danger of prejudice to the [adverse party] ... [2] the length of the delay

10

and its potential impact on judicial proceedings, [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.'" <u>McFadyen v. Duke Univ.</u>, No. 1:07CV953, 2014 WL 12595370, at *4 (M.D.N.C. Apr. 17, 2014) (quoting <u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.</u>, 507 U.S. 380, 395 (1993)); <u>see also</u> <u>Daye v. Potter</u>, 380 F. Supp. 2d 718, 720-21 (M.D.N.C. 2005) (applying the <u>Pioneer</u> excusable neglect factors in considering an untimely filing).

Here, the factors weigh in favor of permitting Williams to file an untimely motion for summary judgment. First, the parties treated Williams's brief in support of summary judgment as a motion and have fully addressed the arguments that Williams brought in that brief. (<u>See</u> Docs. 44, 46.) As a result, Calvin had the opportunity to address Williams's arguments and will suffer no undue prejudice should the court consider Williams's motion. Further, as briefing is complete, consideration of the motion will not result in a delay of proceedings. Moreover, although the delay in filing the motion was caused by Williams's own mistake, there is no indication that he acted in bad faith. In fact, Williams's timely filing of his brief in support of summary judgment suggests that he was attempting to comply with the filing deadline. Only through a good-faith mistake, allegedly the result of his mental health difficulties, was Williams's motion not timely filed. <u>See</u>

11

also <u>Terry v. Swift Transp.</u>, No. 1:16CV256, 2017 WL 4236923, at *2 (M.D.N.C. Sept. 22, 2017) (allowing untimely filing where "the record reflects a complete absence of any sign that anything other than a good-faith mistake occurred"). Finally, the court notes that Williams proceeds *pro se* and significant prejudice would result should the court not consider his filings in support of his motion for summary judgment. Specifically, the largest portion of his briefing on the issues in this case are brought in his brief in support of summary judgment and his response to Calvin's opposition to that brief. (<u>See</u> Docs. 36, 46.) By comparison, Williams's opposition to Calvin's motion for summary judgment is only a single page and provides no legal analysis. (<u>See</u> Doc. 45.) Consideration of Williams's motion and supporting briefing ensures that the issues in the case are appropriately analyzed at the present stage.

As this court has previously informed Williams, he remains bound by the Local Rules and the Federal Rules of Civil Procedure despite his *pro se* status. (<u>See</u> Doc. 33 at 4-5.) At this point, however, Williams has established excusable neglect for his late-filed motion for summary judgment such that the court will consider the merits of that motion, <u>infra</u>.

### 2. Legal Standard

This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). "Federal courts sitting in diversity apply

12

the substantive state law that would apply had the plaintiff filed the case in state court." Hickerson v. Yamaha Motor Corp., 882 F.3d 476, 480 (4th Cir. 2018). As both parties' pleadings indicate that they believe this matter to be governed by North Carolina law, the court will apply North Carolina law for the purpose of the present motion.[6] (See Doc. 38 (citing North Carolina law); Doc. 36 (same); but see Doc. 36 at 8 (citing one Colorado case, but relying on North Carolina law in analysis); Doc. 44 at 7-9 (citing one Colorado case and stating "[n]either North Carolina nor Colorado law recognizes a claim for 'void contract'").)

A court must grant a motion for summary judgment if the pleadings, depositions, and affidavits submitted show that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is considered "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Under this standard, a genuine

---

[6] It should be noted, however, that "[a]ccording to North Carolina's choice-of-law rules, in a breach of contract case the law of the state where the contract was made governs issues of contract construction," TD Bank, N.A. v. Shree Dutt Sai, LLC, No. 1:14-CV-852, 2015 WL 7302259, at *2 (M.D.N.C. Nov. 18, 2015) (quoting Wheels Sports Grp., Inc. v. Solar Commc'ns, Inc., 194 F.R.D. 527, 534 (M.D.N.C. 1999)), including matters bearing upon interpretation and validity of a contract, Tanglewood Land Co. v. Byrd, 261 S.E.2d 655, 656 (N.C. 1980). From the record before the court, it appears that both parties were living in a shared household in Colorado at the time the subject contracts were entered. As the court does not have sufficient briefing on this issue, it cannot be determined with finality the substantive law to be applied at this time.

13

dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. As a result, the court will only enter summary judgment in favor of the moving party when the record "shows a right to judgment with such clarity as to leave no room for controversy" and clearly demonstrates that the non-moving party "cannot prevail under any circumstances." Campbell v. Hewitt, Coleman & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994) (internal quotation marks omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are [fact-finder] functions . . . ." Anderson, 477 U.S. at 255. On summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id.

While the movant bears the initial burden of demonstrating that there are no genuine disputes of material fact, once that burden has been met, the non-moving party must demonstrate that a genuine dispute of material fact actually exists. Bouchat v. Balt. Ravens Football Club, Inc., 346 F.3d 514, 521 (4th Cir. 2003); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A mere scintilla of evidence is insufficient to circumvent summary judgment. Anderson, 477 U.S. at 252. Instead, the nonmoving party must convince the court that, upon the record taken as a whole, a rational trier of fact could find for the

14

nonmoving party. Id. at 248-49. Trial is unnecessary if "the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question." Mitchell v. Data Gen. Corp., 12 F.3d 1310, 1315-16 (4th Cir. 1993).

In this case, the parties have filed cross-motions for summary judgment. Therefore, the court must review each motion independently to determine whether either party deserves judgment as a matter of law. Fed. R. Civ. P. 56(c); Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citing Philip Morris, Inc. v. Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)). When considering each motion, the court must take care to "resolve all factual disputes and any competing, rational inferences in the light most favorable" to the party opposing the motion. Rossignol, 316 F.3d at 523 (quoting Wightman v. Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

As discussed above, Williams proceeds *pro se*. The court therefore construes his filings liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). However, the liberal construction of a *pro se* plaintiff's pleading does not require the court to ignore clear defects in pleading or to become an advocate for the *pro se* party. Chrisp v. Univ. of N.C.-Chapel Hill, 471 F. Supp. 3d 713, 716 (M.D.N.C. 2020) (citations omitted). Courts should not "construct full blown claims from sentence fragments" or "conjure up questions never squarely presented." Beaudett v. City of

15

Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985).

### 3. Transfer and Lease Assignment Claims

As the court has granted dismissal of Williams's claims for fraudulent misrepresentation and unjust enrichment, the sole remaining claim is his claim for "void contract." In his complaint, Williams argues that both the transfer and the assignment to Calvin are void for indefiniteness.[7] (Doc. 19 ¶ 11.) Calvin contends that this claim is deficient as a matter of law, and summary judgment is appropriate, because North Carolina courts do not recognize an action for "void contract." (Doc. 44 at 7.) He further argues that the agreements pursuant to which Williams transferred ownership of the warehouse and assigned the lease in exchange for Calvin's promise to support him financially are valid and enforceable. (Doc. 38 at 12.)

As a threshold matter, North Carolina courts can and have considered actions to declare a contract null and void. See, e.g., Sanders v. Wilkerson, 204 S.E.2d 17 (N.C. 1974); Guy v. Baer, 55 S.E.2d 501 (N.C. 1949); Cox v. Dine-A-Mate, Inc., 501 S.E.2d 353 (N.C. Ct. App. 1998). The court construes Williams's claim for "void contract" to be such an action. In a declaratory action for void contract, a contract that is determined to be vague or

---

[7] In his complaint, Williams makes a variety of additional claims. However, by virtue of his voluntarily dismissals and the briefing, the contested matters in the present motions have narrowed to those discussed, infra.

16

indefinite in some material respect, or unsupported by consideration, may be declared void. See <u>Sanders</u>, 204 S.E.2d at 18; <u>Atkinson v. Wilkerson</u>, 179 S.E.2d 872, 873 (N.C. Ct. App. 1971).

Calvin argues that summary judgment in his favor is appropriate on Williams's declaratory action for void contract because the agreements are evidenced in multiple writings, were supported by offer, acceptance, and consideration, and to the extent any terms within them are not sufficiently definite, the parties have previously "discussed [Williams]'s changing financial needs and reached [] further agreement about how specifically [Calvin] will provide for [Williams]'s financial needs." (Doc. 38 at 11-12.) In response, Williams contends that the assignment of the lease is void because the phrase "support in every way" is too indefinite to be enforceable. (<u>See</u> Doc. 36 at 9-10.) Similarly, he contends that the transfer of the warehouse, made in exchange for continued support in the form of "room, board, medical care, and related needs for the rest of his life," is also too indefinite.[8] (<u>Id.</u> at 8-9.) Accordingly, he contends, these

---

[8] As noted, <u>supra</u>, Williams has also indicated that the transfer was made in exchange for Calvin's promise to return the warehouse to Williams at his request. However, Williams's arguments on summary judgment are based on the assumption that the transfer was made in exchange for Calvin's promise to provide "room, board, medical care, and related needs for the rest of his life." (<u>See, e.g.</u>, Doc. 36 at 5-11; Doc. 46; Doc. 52 at 1.) As Williams does not base his arguments on summary judgment on Calvin's alleged promise to return the warehouse, the court does not consider it in its analysis here.

17

agreements are void and summary judgment should be granted in his favor. (Id.)

Under North Carolina law, a valid contract requires an agreement based on a meeting of the minds and sufficient consideration. See Creech ex rel. Creech v. Melnik, 556 S.E.2d 587, 591 (N.C. Ct. App. 2001). "As a general matter, a contract must be sufficiently definite in order that a court may enforce it." Brooks v. Hackney, 404 S.E.2d 854, 857 (N.C. 1991). "[T]o be binding, the terms of a contract must be definite and certain or capable of being made so; the minds of the parties must meet upon a definite proposition." Elliott v. Duke Univ., Inc., 311 S.E.2d 632, 636 (N.C. Ct. App.), disc. rev. denied, 321 S.E.2d 132 (N.C. 1984). A contract that leaves "material portions open for future agreement is nugatory and void for indefiniteness." Boyce v. McMahan, 208 S.E.2d 692, 695 (N.C. 1974). Where a contract term is vague, "parol evidence is admissible to show and make certain the intention behind the contract," Dockery v. Quality Plastic Custom Molding, Inc., 547 S.E.2d 850, 852–53 (N.C. Ct. App. 2001), so long as such evidence does not "contradict, vary, or add to the written instrument," Kindler v. Wachovia Bank & Tr. Co., 167 S.E. 811, 812 (N.C. 1933). While in North Carolina, a promise to "look after" or "support" someone may be considered too vague to be enforceable, Johnson v. Johnson, 418 B.R. 682, 686 (E.D.N.C. 2009) (citing Lassiter v. Bank of N.C., 551 S.E.2d 920,

18

923–24 (N.C. Ct. App. 2001) and Pace v. Pace, 73 N.C. 119, 1875 WL 2792 at *6 (N.C. 1875)), "[t]here are cases, no doubt, in which the uncertainty of the words of such a promise standing by themselves, may be supplied from the relations of the parties, or the circumstances under which it was made. They may sometimes fairly be construed as a promise to support in the customary manner of living." Pace, 73 N.C. at 127.

Turning to Williams's claim as it relates to the assignment of the lease, the assignment was explicitly made in exchange for Calvin's promise to "support [Williams] in every way," a term which Williams argues is too vague to create a binding contract. (See Doc. 37-1 at 17.) North Carolina courts have found similar agreements "too vague and indefinite to amount to a substantial consideration" in certain circumstances. See Pace, 73 N.C. at 126-27 (indicating that "it does not appear for what length of time the support was to be given; or of what it was to consist — whether it was to include the usual comforts, or only the barest necessaries of life; or that it was ever acted on, or that its performance was ever demanded or tendered"). However, Williams's arguments in his motion for summary judgment are limited solely to the vagueness of the terms within the assignment agreement itself. He does not address whether the term "support" is vague despite circumstances beyond the language in the contract that may otherwise render the term sufficiently definite to be enforceable.

19

See id. at 127.  Indeed, Calvin has attested under penalty of
perjury that at the time of the transfer and assignment, the
parties had already determined that Williams would enter
Abbotswood assisted living facility and with that understanding in
mind, agreed that Calvin would manage Williams's financial needs
for the rest of his life.  (See Doc. 37-1 ¶¶ 3-4.)  If true, this
understanding could provide additional circumstances to render the
term "support" sufficiently definite to be enforceable.  As such,
Williams has failed to establish that he is entitled to summary
judgment on the lease claim as a matter of law.

Calvin argues that he is entitled to summary judgment on the
lease claim because the assignment agreement is sufficiently
definite to be enforceable.  As discussed above, Calvin has
submitted evidence in the form of a sworn statement that could
support a finding of sufficient definiteness based upon the
circumstances surrounding the assignment agreement.  Specifically,
Calvin alleges that the parties agreed at the time of the transfer
and assignment that Williams would enter Abbotswood and that Calvin
would manage his financial needs with that in mind.  (See id.)
However, in deposition testimony, Williams indicates that the
transfer and assignment occurred prior to the parties' agreement
that Calvin would pay Williams's expenses at Abbotswood.  (See
Doc. 37-3 at 22 ("[A]fter [Calvin] kept my warehouse, . . . I tried
to work something out to my advantage and what I worked out is

20

that out of the rent, he would pay Abbotswood.").[9]  Williams, in other sworn statements, contends that the parties never agreed to an exact dollar amount for "support" (Doc. 48) and indicates that he "has had disagreements so far on interpretations" of "support," such as whether a single-family house is included in the agreement (see Docs. 47, 54).  On this record, the success of Calvin's claim depends on the believability of his statements as well as those of Williams, which are ultimately credibility determinations.  As Calvin's success is contingent upon determinations of credibility, summary judgment in his favor is not appropriate.  Therefore, to the extent the parties move for summary judgment on the validity of the assignment agreement, the cross motions will be denied.

Turning to Williams's claim to void the transfer of the warehouse, Williams argues the transfer was made by terms similarly too vague to constitute consideration.  The agreement to transfer the warehouse was executed through a quitclaim deed, "[f]or valuable consideration," that was signed by Williams on April 16, 2020.  (See Doc. 19 at 10.)  Although not specified in the deed, the record and briefing indicate that the transfer was made on the understanding that Calvin would "provide for [Williams]'s room,

_____

[9]  This deposition testimony, however, reveals some confusion on Williams's part as to the order of events.  (See, e.g., Doc. 37-3 at 25 ("I didn't realize that – until you pointed it out[,] that I had started the process of moving [to Abbotswood] earlier.").)  Despite this confusion, Williams does not indicate in his deposition that the transfer and assignment agreements were made contemporaneously with the Calvin's promise to pay for Abbotswood, as Calvin has contended.

21

board, medical care, and related needs for the rest of his life."[10]
(See Doc. 52 at 4; Doc. 37-2; Doc. 37-1 ¶ 4; Doc. 37-3 at 37-38.)

In North Carolina, a valid deed must be in writing, identify both the grantor and grantee, include a description of the property to be transferred, effectively transfer the property from grantor to grantee, and be signed, sealed, and delivered by the grantor. See Honacher v. Everson, 656 S.E.2d 736 (N.C. Ct. App. 2008) (citing Williams v. Bd. of Educ., 201 S.E.2d 889, 893 (N.C. 1974)). "As a general rule a deed which is otherwise valid will not be invalidated by reason of a total or partial failure of consideration, and will nevertheless operate to convey title." Gadsden v. Johnson, 136 S.E.2d 74, 77 (N.C. 1964); see also Philbin Invs., Inc. v. Orb Enters., 242 S.E.2d 176, 178-79 (N.C. Ct. App. 1978) ("'[A] deed in proper form is good and will convey the land described therein without any consideration, except as against creditors or innocent purchasers for value.'" (quoting Smith v. Smith, 107 S.E.2d 530, 535 (N.C. 1959)); Miller v. Russell, 720 S.E.2d 760, 768 (N.C. Ct. App. 2011) ("[T]here is no legal requirement that a deed be supported by consideration."). In considering a deed transferred in exchange for a promise to support

---

[10] Although "consideration named in a deed is presumed to be correct[,] . . . [n]ot being contractual[,] it may be inquired into by parol evidence and shown to have been otherwise than as recited in the deed." Gadsden v. Johnson, 136 S.E.2d 74, 77 (N.C. 1964). "[S]uch testimony may not be used, however, to alter or contradict the conveyance itself, in the absence of fraud, mistake or undue influence." Id.

the grantor for life, the North Carolina Supreme Court has indicated that "if there is no fraud or mistake . . . failure of consideration alone does not authorize cancellation of a deed made in consideration of an agreement to support." Mills v. Dunk, 140 S.E.2d 358, 361 (N.C. 1965); see also Gadsen, 136 S.E.2d at 77 (indicating that a failure of consideration may justify setting aside a deed where additional circumstances exist that make other remedies inadequate, such as fraud or undue influence).

Here, beyond Williams's contention that the deed is not supported by adequate consideration, the parties do not contest the validity of the deed, and from the court's review of the record, the deed is valid. The deed, signed by Williams, states that "[f]or valuable consideration, receipt of which is hereby acknowledged, Ronald Calvin Williams, Single Grantor, hereby conveys unto Ronald Calvin Williams, II, Grantee," a parcel of land located in Union County, NC, and contains a detailed description of that property. (See Doc. 19 at 10.) The deed was subsequently recorded in the Union County Register of Deeds by Williams with Calvin's knowledge. (See Doc. 19 at 2; Doc. 38 at 2-3.) As such, the deed is valid. North Carolina courts have expressly stated that deeds exchanged for the promise of support, such as are the circumstances here, will not fail for lack of consideration absent fraud, mistake, or undue influence. See Mills, 140 S.E.2d at 361; Minor v. Minor, 62 S.E.2d 60, 63 (N.C.

23

1950).[11]  Here, Williams has voluntarily dismissed his claim of fraudulent misrepresentation and from the record there is no indication that Calvin exercised either a fraud or undue influence over Williams, or that there was a mistake, in the transfer of the warehouse.  As the deed is valid and the court identifies no fraud, mistake, or undue influence in the transfer, the deed will not fail for lack of consideration.  Therefore, Williams's motion for summary judgment on these grounds will be denied.

A deed may be voidable on the ground of mental incompetency if "the grantor was laboring under such a degree of mental infirmity as to make him incapable of understanding the nature of his act."  Beam v. Almond, 157 S.E.2d 215, 224 (N.C. 1967); see also Emanuel v. Emanuel, 338 S.E.2d 620, 621 (N.C. Ct. App. 1986) ("The deed of one *non compos mentis*, that is of one who is incompetent or insane, is *voidable* and not void." (emphasis in original) (citing Ellington v. Ellington, 9 S.E. 208 (N.C. 1889)).  Although Williams has submitted some evidence that may support a claim of incompetence based on his inadvertent over-medication of antiseizure drugs at the time of the transfer and assignment (see Doc. 47), he has not argued incompetence as a ground for relief in

_____

[11] Additionally, a deed exchanged for a promise of support may be rescinded where the grantee fails to perform and "performance of the agreement is made a condition precedent to the vesting of the estate, or a condition subsequent for which the estate might be divested." Minor, 62 S.E.2d at 63.  The parties do not contend that these circumstances are present here.

24

either his amended complaint (see Doc. 19) or in his briefing on summary judgment (see Docs. 36, 46).

Federal Rule of Civil Procedure 15(b)(2) provides that issues not raised by the pleadings may be considered by the parties' express or implied consent without amendment of the pleadings based upon evidence presented at trial.[12]  Under this rule, a party may later move "to conform [the pleadings] to the evidence and to raise an unpleaded issue.  But failure to amend does not affect the result of the trial of that issue." Fed. R. Civ. P. 15(b)(2); see also Bellsouth Telesensor v. Info. Sys. & Networks Corp., 65 F.3d 166 (4th Cir. 1995) ("Rule 15(b) allows parties to amend their pleadings to conform to the evidence presented at trial if the parties expressly or impliedly agreed to try the unpleaded issue.").  "Rule 15(b)(2) does not offer a failsafe for any and every faulty pleading."  Dan Ryan Builders, Inc. v. Crystal Ridge Dev., Inc., 783 F.3d 976, 983 (4th Cir. 2015).  Rather, the Rule sets forth "an exception to the general rules of pleading . . . when the facts proven at trial differ from those alleged in the complaint, and thus support a cause of action that the claimant did not plead."  Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond,

_____

[12] There is a circuit-split as to whether Rule 15(b) applies at the summary judgment stage.  See Ahmad v. Furlong, 435 F.3d 1196, 1203 n.1 (10th Cir. 2006) (noting circuit split).  Although the Fourth Circuit has not directly addressed this issue, there is support for applying Rule 15(b) here.  See People for Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 367 (4th Cir. 2001) (affirming grant of summary judgment on non-pleaded issue considered pursuant to Rule 15(b)).

25

80 F.3d 895, 901 (4th Cir. 1996).

But "[b]ecause notice to the defendant of the allegations to be proven is essential to sustaining a cause of action, Rule 15(b) applies *only* when the defendant has consented to trial of the non-pled factual issues and will not be prejudiced by amendment of the pleadings to include them." Id. (emphasis in original). "Thus, Rule 15(b)(2) requires that a party expressly or impliedly consent to trial on an unpled claim and not be prejudiced by doing so." Dan Ryan, 783 F.3d at 983. "The principal test for prejudice in such situations is whether the opposing party was denied a fair opportunity to defend and to offer additional evidence on that different theory." Evans Prod. Co. v. W. Am. Ins. Co., 736 F.2d 920, 924 (3d Cir. 1984) (cited approvingly in Elmore v. Corcoran, 913 F.2d 170, 173 (4th Cir. 1990)).

Here, although Williams has not pleaded incompetence, some of his evidence could be considered to suggest that he may have been incompetent at the time of the transfer and assignment. (Doc. 47.) However, Williams submitted this evidence after briefing on the motions for summary judgment concluded. Calvin was therefore afforded no opportunity to address this claim or raise an objection to the court's consideration of it. Further, Williams has not made explicit his intention to raise a claim of incompetence, instead submitting the evidence without indication as to its purpose. (See id.) On this record, the court cannot conclude

26

that the parties have consented to consideration of the issue of Williams's competence.[13]  Williams's evidence on this issue will therefore not be considered as amending the pleadings to include a claim of incompetence.

Because the deed is valid, it will not fail for lack of consideration.  Summary judgment on this portion of Williams's claim of "void contract" is accordingly rendered in favor of Calvin.

## III. CONCLUSION

For the reasons stated, therefore,

IT IS ORDERED that Plaintiff's motion for summary judgment (Doc. 57) is DENIED and Defendant's motion for summary judgment (Doc. 37) is GRANTED IN PART and DENIED IN PART as follows: Summary judgment is granted in Defendant's favor on the issue of the validity of the deed and denied on the issue of the validity of the lease assignment.

IT IS FURTHER ORDERED that Plaintiff's claims for fraudulent misrepresentation and unjust enrichment are DISMISSED WITH PREJUDICE.

---

[13] Even on the limited record before the court, the viability of an incompetency claim is questionable.  Williams himself appears to have drafted and had notarized the quitclaim deed transferring the warehouse to Calvin.  (See Doc. 19 ¶ 4.)  Further, his communications with his daughter shortly thereafter suggest awareness of the nature of his actions.  (See Doc. 37-2 at 2.)  Regardless, as the claim has not been pleaded, the court does not resolve it here.

/s/   Thomas D. Schroeder
                              United States District Judge

August 19, 2021