IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| RONALD C. WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) 1:20cv904 |
| RONALD C. WILLIAMS, II, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, Chief District Judge.

This lawsuit is an intrafamilial dispute over ownership of a warehouse, the rights to a related lease, and a promise to support the Plaintiff. After now 84-year-old Plaintiff Ronald C. Williams ("Williams") deeded the property and assigned the lease to his son, Defendant Ronald C. Williams, II ("Calvin"), he sought to undo the transactions. On cross motions for summary judgment, the court dismissed Williams's claim seeking to declare void the transfer of the deed to the property. (Doc. 58.) A bench trial was held on March 21, 2022, on the merits of Williams's remaining claim seeking a declaratory judgment voiding the assignment of the lease for the warehouse.[1] For the reasons that follow, the court declines to grant the relief requested, and Williams's claim will

---

[1] Williams has since trial filed a flurry of letters to the court making a variety of post-trial arguments and claims. (Docs. 88 through 96.) Leave of court for post-trial briefing was not sought, and the court does not consider them as it relates to the merits of the claim.

be dismissed without prejudice.

**I. BACKGROUND**

*Pro se* Plaintiff Williams filed his initial complaint in Guilford County (North Carolina) Superior Court in August 2020. (Doc. 1-1.) Defendant Calvin, his adult son, timely removed the action to this court, invoking diversity jurisdiction, pursuant to 28 U.S.C. §§ 1332(a) and 1441. (Doc. 1.)

Williams's amended complaint seeks to undo his transfer to Calvin of the deed to a warehouse and the assignment of the rights under a lease agreement with a warehouse tenant.² Williams brought

---

² In his amended complaint, Williams alleges that he and Calvin "agreed to deed the warehouse to [Calvin] until [Williams] requested it back." (Doc. 19 ¶ 4.) Williams alleges that "[his] warehouse was hijacked" and that "[a]lthough [he] never agreed to sell it on any terms, Calvin created the attached 'Guidelines'." (Id. ¶ 11.) The "Guidelines" describe the alleged consideration for the deed transfer, including Calvin's statement that "[Williams] has conveyed ownership of the warehouse to me upon the following conditions: I am required . . . to support him until his death." (Doc. 19 at 15.)
  Williams's description of events leading up to the deed transfer and lease assignment has changed throughout the life of the case; including arguing at one time that the lease assignment was not made to Calvin, but actually made to himself. (See Doc. 37-3 25:13-26:9 ("You see that I assigned the lease to myself. Right?").) Williams's more recent filings, and arguments at trial, suggest his position has changed such that he contends that the transfers were made in exchange for Calvin's promise to "support [Williams] in every way". (See Defendant's Trial Exh. 4 at 13; Defendant's Trial Exh. 5 ("I deeded the warehouse to Calvin in exchange for his taking care of me until my death."); see also Doc. 36 (presenting arguments on summary judgment based upon Calvin's alleged promise to provide "room, board, medical care"); Doc. 52 at 1 ("The undisputed material facts are: . . . the alleged contract does not define with certainty the words 'room, board, medical care, and related needs' and 'support' or any other words . . . ."); Doc. 81 at 6-8 (admitting he "exchange[d] the lease . . . for Calvin's promise to 'support' [him]" and contending that "[t]he alleged contract which Calvin contends gave ownership of the warehouse to him is 'void for indefiniteness' . . . [s]o, the deed [is not enforceable]" (emphasis omitted)).)

2

three claims against Calvin: (1) fraudulent misrepresentation, based on a claim that Calvin induced Williams to transfer the deed to the property/warehouse under Calvin's oral representation that he would transfer it back to Williams when the latter requested it; (2) an action for "void contract," alleging that the oral promise to return the property omitted material terms as to what Calvin could do with the property while holding it and as to the mechanics for determining its return to Williams upon the latter's demand; and (3) unjust enrichment, alleging that Williams's transfer of the warehouse was not intended to be a gift and that Calvin failed to make certain payments to or on behalf of Williams. (Doc. 19.) The amended complaint also alleges that the parties' agreement is void because it fails to set out key terms, such as a formula for determining the amount of rental income to which Williams is entitled and what living expenses are covered, and who determines where Williams shall live and how much will be spent on his living expenses. (Doc. 19 ¶ 11.) While the amended complaint does not so indicate, Williams's promise to assign his rights under a lease to the property and Calvin's promise to care for Williams in exchange is set out in handwriting at the end of the lease agreement, which is not attached to or expressly referred to in the complaint. (See Defendant's Trial Exh. 4.)

In January 2021, Williams filed a motion that the court construed as one seeking a preliminary injunction, which the court

3

denied. (Docs. 23, 33.) Both parties then moved for summary judgment (Docs. 37, 57), and Williams filed notices to voluntarily dismiss his claims for fraudulent misrepresentation (Doc. 40) and unjust enrichment (Doc. 41). The court denied Williams's motion for summary judgment; the court granted Calvin's motion relating to Williams's request for a declaration that the deed transfer was void but denied it as to Williams's claim relating to the validity of the lease assignment; and the court granted Williams's motions to dismiss his fraudulent misrepresentation and unjust enrichment claims, which were dismissed with prejudice. (Doc. 58.)

This left for trial Williams's claim for a declaration that the lease assignment was void because the consideration for it – Calvin's promise to care for Williams for life – was too vague. The court held a bench trial on this claim on March 21, 2022. Williams presented two witnesses: himself and Calvin; Calvin presented three witnesses: himself, Williams, and his sister, Audra Dougherty. At the close of Williams's case-in-chief, Calvin moved for judgment pursuant to Rule 52(c) of the Federal Rules of Civil Procedure, and the court reserved ruling. The case is ready for resolution.

Pursuant to Rule 52, the court enters the following findings of fact and conclusions of law based upon an evaluation of the evidence, including the credibility of witnesses, and the inferences that the court has found reasonable to be drawn

4

therefrom.

**II. ANALYSIS**

This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332(a)(1), as Williams is a resident of North Carolina, and Calvin is a resident of Colorado.

Williams's sole remaining claim has been construed by the parties as seeking a declaratory judgment that Williams's lease assignment to Calvin fails for lack of consideration because Calvin's promise to care for him for life is allegedly too indefinite to constitute valid consideration. Williams's case at trial focused on whether the handwritten promise related to the lease assignment is indefinite enough to render the assignment of the lease void.

The parties do not dispute that, about twenty years ago, Williams purchased a warehouse located in Union County, North Carolina. On October 1, 2018, Williams entered into a five-year lease agreement with a tenant on a standard North Carolina Association of Realtors, Inc. form lease. (Defendant's Trial Exh. 4.) Pursuant to the lease, the tenant pays approximately $75,000 per year in rent with annual 3 percent increases. (Id.)

From about July 2019 to May 6, 2020, Williams resided with Calvin in the son's Colorado home. In April 2020, Williams, Calvin, and Calvin's siblings made plans for Williams to enter an assisted living facility, Abbotswood at Irving Park

5

("Abbotswood"), located in Greensboro, North Carolina. Due to Williams's health at the time, he and his family expected him to remain at Abbotswood indefinitely.

On April 16, 2020, Williams transferred the property on which the warehouse was located to Calvin via a quitclaim deed. (Defendant's Trial Exh. 2.) Williams prepared the deed, drafted it, signed the deed before a notary, and mailed the deed to the Union County, North Carolina Register of Deeds to be recorded, all without requiring assistance from anyone. Williams was neither directed nor coerced to make this transfer. At about that time, Williams voluntarily drafted and executed an assignment to Calvin of the current tenant's lease agreement, as described above. On page 13 of the lease, the parties handwrote the following:

> For valuable consideration, Ronald C. Williams hereby assigns this lease to Ronald Calvin Williams
>
> For valuable consideration, Ronald C. Williams II agrees to support in every way his father, Ronald C. Williams

(Id. at 13.) This is followed by the signatures of father and son, Williams and Calvin. The phrase "support in every way" is not defined. Subsequent emails and testimony indicate that the parties understood the phrase "support in every way" to mean that Calvin would pay the financial cost of Williams's room, board, medical care, and related expenses while at Abbotswood. The parties understood that the cost of Williams's support at

6

Abbotswood could ultimately exceed the revenue generated from the lease of the warehouse.³ (See Defendant's Trial Exh. 5.)

On April 26, 2020, Williams sent an email to his daughter, Dougherty, stating that he had

> deeded the warehouse to Calvin in exchange for his taking care of me until my death. Then he will divide it three ways. His obligation to support me exists whether there is enough or not. He could be required to spend his own money.

(Id.)

On April 30, 2020, Calvin sent an email to the tenant of the warehouse stating, "As mentioned, Dad [Williams] has moved the title of the building over to me. He will be stepping back from his financial management as he moves into the retirement center in Greensboro. If anything needs my attention, please [contact] me." (Defendant's Trial Exh. 11.)

On May 9, 2020, Williams sent Calvin an email stating, "I suggest as a solution to the warehouse management problem that you receive the rent and pay all bills without my input and that I receive only my [social security] Check." (Defendant's Trial Exh. 8.) Calvin responded, "Sounds like a plan." (Id.) Calvin understood Williams's May 9, 2020 email to be a clarification of his support obligation. From June 2020 through February 2021, Calvin paid the $4,040.00 monthly cost of Williams's suite at

---

³ Abbotswood offers varying levels of care, ranging from independent living, to assisted living, to specialized care.

7

Abbotswood.[4]

In March 2021, unbeknownst to Calvin, Williams moved out of Abbotswood into a traditional apartment community in Greensboro, North Carolina, called The Lofts. The Lofts is not a senior living facility and does not offer the same amenities as Abbotswood. Williams requested, and Calvin agreed, that Calvin would pay the monthly cost of rent for Williams's apartment and that Calvin would send Williams an additional $1,000.00 per month for utilities, food, and other necessary living expenses. Calvin has paid the rent at The Lofts and supplied the $1,0000 since March 2021. Williams has periodically requested additional funds from Calvin for purposes outside of room, board, and related expenses. Calvin has largely denied these various requests.

### A. Mootness

During the trial, Calvin argued that Williams's claim is mooted because the proceeds from the lease are due to the owner of the warehouse as a matter of law by virtue of the court's entry of judgment against Williams on his claim to declare the deed transfer invalid. If true, this preliminary issue would resolve whether the court is in a position to grant the relief Williams seeks.

While Calvin did not raise this argument until trial, standing

---

[4] Williams claims that Calvin failed to properly pay certain support obligations relating to Abbotswood. These are not relevant to the court's resolution of the lease issue, and the court therefore does not address them.

8

is a threshold jurisdictional requirement and can be raised by any party or sua sponte by the court at any time. See Plyler v. Moore, 129 F.3d 728, 731 n.6 (4th Cir. 1997) (holding that issues regarding subject-matter jurisdiction "may be raised at any time by either party or sua sponte by this court"); Center State Farms v. Campbell Soup Co., 58 F.3d 1030, 1038 (4th Cir. 1995) ("Because objections to standing are jurisdictional in nature, they may be raised at any time."). Whether a party has standing to maintain an action in federal court is a question of federal, not state, law. Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985) (holding that "[s]tanding to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court"). In adjudicating claims for declaratory relief, federal courts apply the federal Declaratory Judgment Act, 28 U.S.C. § 2201, rather than state analogues such as North Carolina General Statute § 1-253. See White v. National Union Fire Insurance Co., 913 F.2d 165, 167 (4th Cir. 1990) (holding "[f]ederal standards guide the inquiry as to the propriety of declaratory relief in federal courts, even when the case is under the court's diversity jurisdiction").[5] The court therefore has construed Williams's declaratory claim for "void contract" as

---

[5] Thus, while the record indicates that both parties were living in a shared household in Colorado when they entered into the subject contracts, the court need not resolve whether Colorado or North Carolina law applies.

9

Case 1:20-cv-00904-TDS-JLW   Document 97   Filed 05/27/22   Page 9 of 20

to the lease as a claim brought under 28 U.S.C. § 2201.[6]

Federal courts sitting in diversity may enter declaratory judgments pursuant to 28 U.S.C. § 2201 if three conditions are met: (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court has subject matter jurisdiction over the parties, independent of the request for declaratory relief; and (3) the court does not abuse its discretion in exercising jurisdiction. Volvo Construction Equipment North America, Inc. v. CLM Equipment Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004); Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239-41 (1937) (explaining that the "actual controversy" requirement for a declaratory judgment is synonymous with the Article III requirements). The Declaratory Judgment Act does not require courts to issue declaratory relief; "[r]ather, a district court's decision to entertain a claim for declaratory relief is discretionary." Aetna Casualty & Surety Co. v. Ind-Com Electric Co., 139 F.3d 419, 421 (4th Cir. 1998) (per curiam); see also Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995).[7]

---

[6] This court's earlier statement that "North Carolina courts can and have considered actions to declare a contract null and void" only addressed Williams's claim in so far as it related to Calvin's contention that "North Carolina courts do not recognize an action for 'void contract.'" See Williams v. Williams, No. 1:20CV904, 2021 WL 3679613, at *6 (M.D.N.C. Aug. 19, 2021), appeal dismissed, No. 21-2020, 2021 WL 5985535 (4th Cir. Dec. 17, 2021).

[7] The Fourth Circuit has enumerated several factors that a district court

10

To satisfy the "controversy" requirement of Article III, the dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests." Medimmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). A plaintiff must "establish[] throughout all stages of litigation (1) that he is suffering an injury-in-fact or continuing collateral consequence, (2) that his injury is fairly traceable to the challenged action or decision, and (3) that a favorable decision would be likely to redress his injury." Townes v. Jarvis, 577 F.3d 543, 554 (4th Cir. 2009) (Shedd, J., dissenting) (emphasis omitted) (footnote omitted) (citing Spencer v. Kemna, 523 U.S. 1, 10-14 (1998)).

"[M]ootness has been described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." Jarvis, 577 F.3d at 546 (citations omitted). "Thus, for a controversy to be moot, it must lack at least one of the three required elements of Article

---

should consider in determining whether to exercise its discretion to entertain a declaratory judgment action. See Ind-Com, 139 F.3d at 422. These include whether "the declaratory relief sought: (1) will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." Id. (citation omitted). Furthermore, the district court should consider (3) principles of federalism, efficiency, comity, and procedural fencing, id. at 423, and (4) whether "allowing [the] case to go forward would produce piecemeal litigation," id. at 424.

11

III standing: (1) injury in fact, (2) causation, or (3) redressability." Id. at 546-47 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)). For an injury to satisfy the redressability standard, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan, 504 U.S. at 561 (citation omitted). "The party invoking federal jurisdiction bears the burden of establishing standing." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014) (citation omitted); see Lujan, 504 U.S. at 561 ("[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.").

Here, Williams alleges injuries from the transfer of the warehouse and assignment of the lease: (1) losing the ownership rights to the warehouse, and (2) losing the right to receive rental payments pursuant to the lease. (See, e.g., Docs. 83; 81; 36 at 13 (arguing this court should hold "Williams still owns the warehouse, lease, and rents.")). At summary judgment, this court decided Williams's declaratory "void contract" claim relating to the deed/warehouse, granting Calvin's motion to dismiss this claim on the ground that the deed transfer was valid. (Doc. 58 at 27 (holding that "[b]ecause the [warehouse] deed is valid, it will not fail for lack of consideration").) Thus, Williams can no

longer recover ownership of the warehouse, and his only remaining injury is the loss of rental income.

Williams transferred the warehouse to Calvin through a quitclaim deed (Defendant's Trial Exh. 2), and he did not "expressly reserve his right to collect subsequently accruing rents." Pearce v. Gay, 139 S.E.2d 567, 569 (N.C. 1965). As owner of the warehouse, Calvin enjoys the rights of the "landlord" under North Carolina law and is thus entitled to the rent proceeds of the warehouse. See, e.g., Gates v. Max, 34 S.E. 266, 267 (N.C. 1899); Pearce, 139 S.E.2d at 569 ("A conveyance of land, which is subject to a valid and continuing lease, passes to the purchaser the right to collect the rents thereafter accruing. . . . If the grantor is to collect rents accruing subsequent to the effective date of the conveyance, he must, by reservation in his deed, provide that grantee shall not be entitled to possession prior to the expiration of the term fixed in the lease, or otherwise expressly reserve his right to collect subsequently accruing rents."); Murphrey v. Winslow, 318 S.E.2d 849, 852 (N.C. Ct. App. 1984), rev'd on other grounds, 327 S.E.2d 878 (N.C. 1985) ("[A] conveyance of land, which is subject to a valid and continuing lease, passes to the purchaser the right to collect the rents thereafter accruing. . . . [A] separate assignment of the . . . lease is [not] necessary . . . [as] the rights and liabilities existing between the grantee and lessee are the same as those

13

existing between the grantor and the lessee, after the lessee is given notice of the transfer of the property" (citation omitted)); Lashani v. Hanhan, 612 S.E.2d 693 (N.C. Ct. App. 2005) (unpublished) ("Once defendant became aware that the real estate had been conveyed, and once he was told to direct all correspondence relating to the property to plaintiff, it became his obligation to send his notice of lease renewal [pursuant to the lease] to plaintiff, rather than to [the previous landowners]."); Strickland v. Lawrence, 627 S.E.2d 301, 308 (N.C. Ct. App. 2006) (holding that a transfer of land, along with an assignment of a lease, also included plaintiff's mining permit for the land because, "[w]hile the sale of the . . . property did not include the sale of the Mining Permit, plaintiffs did not make any reservation of rent or of any other interest in the . . . property in their conveyance to [defendants]"); see also N.C. Gen. Stat. Ann. § 42-2 ("Every conveyance of any rent, reversion, or remainder in lands, tenements or hereditaments, otherwise sufficient, shall be deemed complete without attornment by the holders of particular estates in said lands."); N.C. Gen. Stat. Ann. § 42-8 ("The grantee in every conveyance of reversion in lands, tenements or hereditaments has the like advantages and remedies by action or entry against the holders of particular estates in such real property, and their assigns, for nonpayment of rent, and for the nonperformance of other conditions and agreements contained in the

14

instruments by the tenants of such particular estates, as the grantor or lessor or his heirs might have."). As the North Carolina Supreme Court stated in Pearce, "When title passes, lessee ceases to hold under the grantor. He then becomes a tenant of grantee, and his possession is grantee's possession. Attornment is unnecessary, [N.C. Gen. Stat.] § 42-2."

This is consistent as well with the express terms of the lease in this case, which provides:

> (b) If Landlord sells, transfers, or conveys its interest <u>in the Premises</u> or this Lease, or if the same is foreclosed judicially or nonjudicially, or otherwise acquired, by a Landlord mortgagee, upon the request of Landlord or Landlord's successor, <u>Tenant shall attorn to said successor, provided said successor accepts the Premises subject to this Lease</u>. . . .

(Defendant's Trial Ex. 4 at 10 (emphasis added).) Here, Williams deeded the warehouse to Calvin (Defendant's Trial Ex. 5), and Williams concedes that Calvin is collecting the lease payments from the tenant.

Williams's remaining claim before the court seeks a declaratory judgment that his assignment of the lease to Calvin, contained in handwritten notes at the end of the lease, is void because Calvin's related promise to care for Williams is unenforceable as unduly vague. (Defendant's Trial Ex. 4 at 13.) Williams does not allege breach of contract. In fact, there was substantial evidence that Calvin was paying Williams's living expenses, although there is a dispute over the scope of what should

15

be covered. Williams's declaratory request is not redressable by a favorable decision. Even if the court were to agree with Williams that Calvin's promise to support him is unduly vague, the rents due under the lease, which Williams seeks, would still be owed by the tenant to Calvin as a matter of law. See In re Mutual Funds Investment Litigation, 529 F.3d at 216-17; SAS Institute, Inc. v. World Programming Limited, 874 F.3d 370, 389-90 (4th Cir. 2017) (vacating as moot the district court's ruling granting summary judgment to defendant on plaintiff's claim for copyright infringement where "[Plaintiff] would not receive the [remedy] it seeks even were it to prevail . . . . Thus, the legal resolution of the copyright question would have no effect on the relief afforded the parties").

Because Williams's claim fails to satisfy the "redressability" standing requirement, his claim is moot and thus fails to satisfy the "controversy" requirement of Article III.

Alternatively, because addressing Williams's declaratory claim would not provide him the relief he seeks, the court declines to exercise its discretion to issue declaratory relief. See Ind-Com, 139 F.3d at 421 ("[A] district court's decision to entertain a claim for declaratory relief is discretionary."). Even if Williams's lease assignment and Calvin's promise to support were declared void, Calvin would still be entitled to all the proceeds under the lease because he owns the deed to the warehouse and the

16

property on which it is located. Thus, entertaining Williams's request for declaratory judgment – rescinding the lease assignment – will neither serve a useful purpose in clarifying and settling the legal relations in issue nor afford the Plaintiff any relief.

For these reasons, Williams's request for declaratory judgment that the lease assignment fails for lack of consideration is denied.

### B. Motion for Reconsideration

Williams also moves for reconsideration of the court's ruling (Doc. 58) granting in part Calvin's motion for summary judgment. (Docs. 86.) Calvin did not file a response.

District courts have discretion to reconsider interlocutory orders until a final judgment is entered. Akeva, L.L.C. v. Adidas America, Inc., 385 F. Supp. 2d 559, 565 (M.D.N.C. 2005); see also American Canoe Ass'n, Inc. v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003) ("[A] district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final judgment when such is warranted."). "Most courts have adhered to a fairly narrow set of grounds on which to reconsider their interlocutory orders and opinions." Akeva, 385 F. Supp. 2d at 565.

Where an order is not final and does not resolve all claims, as in the case of entry of partial summary judgment, reconsideration of the interlocutory order is subject to the

17

court's discretion under Federal Rule of Civil Procedure 54(b), and not the heightened standards of Rules 59(e) or 60(b). American Canoe, 326 F.3d at 514–15. However, such standards "have evolved as a means of guiding that discretion." Id. at 515. In doing so, "courts in this Circuit have frequently looked to the standards under Rule 59(e) for guidance in considering motions for reconsideration under Rule 54(b)." Hatch v. DeMayo, No. 1:16CV925, 2018 WL 6003548, at *1 (M.D.N.C. Nov. 15, 2018) (collecting cases). Generally, courts will only reconsider interlocutory rulings when (1) there has been an intervening change in controlling law, (2) new evidence becomes available, or (3) the earlier decision was based on a clear error of law or would result in a manifest injustice. Akeva, 385 F. Supp. 2d at 566. Such a motion allows a district court to correct its own errors, but it does not serve as a vehicle for a party to raise new arguments or legal theories that could have been raised before the judgment. See Hatch, No. 1:16cv925, 2018 WL 6003548, at *1 (slip copy) (quoting South Carolina v. United States, 232 F. Supp. 3d 785, 793 (D.S.C. 2017)). While the court's authority to reconsider interlocutory orders "may be tempered at times by concerns of finality and judicial economy," "[t]he ultimate responsibility of the federal courts . . . is to reach the correct judgment under law." American Canoe, 326 F.3d at 515.

Here, Williams "moves the court to re-consider its [partial

18

summary judgment] decision" in light of the March 21, 2022 bench trial. (Doc. 86.) Williams does not argue that there has been an intervening change in controlling law, that new evidence has become available, or that the earlier decision was based on a clear error of law or would result in a manifest injustice. See Akeva, 385 F. Supp. 2d at 566. In fact, at the bench trial the court directly advised the parties it was not permitting them to re-litigate the deed transfer claim that the court already decided. Accordingly, the court declines to alter its ruling. (See generally Doc. 58.)

For these reasons, Williams's motion to reconsider (Doc. 86) will be denied.

### III. CONCLUSION

For the reasons set forth herein, therefore,

IT IS ORDERED that Williams's action seeking a declaratory judgment that the lease assignment is void is DENIED as moot and that Williams's declaratory action for void contract on these grounds (Doc. 19) be DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Williams's motion for reconsideration (Doc. 86) is DENIED.

IT IS FURTHER ORDERED that any request for costs be filed within thirty (30) days, pursuant to the requirements of Federal Rule of Civil Procedure 54(d) and Local Rule 54.

A Judgment in conformance with this Order will be entered

simultaneously.

                                                  /s/    Thomas D. Schroeder
                                               United States District Judge

May 26, 2022